UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

v.

DAVID LANDRY,

CASE NO. 15-cr-10389-IT

**DAVID LANDRY'S MOTION FOR RECONSIDERATION OF
COURT'S DENIAL OF MOTION FOR COMPASSIONATE RELEASE 18
U.S.C. §3582 [DOCKET NO. 170]**

*"im negative 3 out of 12 tested postive so we are down to 9,lemme kno update on motion pls"*

-David Landry Corrlinks email, Novermber 11, 2020: stating that merely 9 (out of 223) inmates on his block remain negative for COVID-19. (see Exhibit 7)

David Landry hereby respectfully moves for reconsideration of the Court's denial of his

Motion for Compassionate Release 18 U.S.C. §3582 [Docket No. 170] based on new evidence.

First, the CDC has issued new guidance regarding increased COVID-19 risk factors based on

BMI and history of smoking. Second, Fort Dix is now in the midst of a massive COVID-19

outbreak posing an imminent threat to Mr. Landry. Lastly, the COVID-19 outbreak at Fort Dix

has deprived Mr. Landry of access to proper nutrition, adequate healthcare, and rehabilitative

programming to which he is entitled. Continuing to detain Mr. Landry in a BOP facility flies in

the face of all the goals of sentencing.

FACTS

Mr. Landry was preparing an affidavit to alert the court to the new peril posed by

COVID-19 in Fort Dix when this Court issued its ruling on his Motion for Compassionate

Release. Since his initial filing and the Court's ruling, Mr. Landry has learned that his risk

factors have increased. The CDC continues to issue new guidance regarding COVID-19 risk factors; the current global pandemic caused by this novel coronavirus is developing daily and medical information surrounding appropriate precautions and risk factors is changing at a similar rate. The CDC updated its website with new factors that increase risk of complications:

> "Revisions were made on October 6, 2020 to reflect recent data supporting increased risk of severe illness from the virus that causes COVID-19 among adults with COVID-19 who have obesity, who have overweight, or who smoke or have a history of smoking." [1]

The new CDC information confirms suspected risk factors—Mr. Landry's weight—and is cause for further alarm for the known risk factors of asthma and a history of smoking. On three fronts Mr. Landry is undoubtedly in danger of severe complications if he contracts COVID-19.

Mr. Landry is now almost certain to contract COVID-19 without Court intervention due to the new outbreak at Fort Dix that is spreading like wildfire. On October 27, the BOP's website reflected the following numbers for FCI Fort Dix: 817 inmates with completed tests, 206 with pending tests, and 161 positive tests in a facility with a total of 2716 inmates.[2] 7.6% of inmates had pending tests on October 27. One week later, on November 3, those numbers skyrocketed: there were 166 active cases amongst inmates and 10 amongst staff, with tens of tests still pending. On November 3, the BOP's website reflects the following updated COVID-19 numbers: 1121 inmates have been tested, 33 tests are pending, and 339 of the tests were positive. According to differences in the October 27 and November 3 numbers, of the 304 tests administered at Fort Dix in that period, over **half** of those tested were positive, with almost 10% of those tests still pending. Fewer than half of inmates have been tested despite this alarming positive rate careening upward every day.

---

[1] *People with Certain Medical Conditions*, Centers for Disease Control (Updated Nov. 2, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html
[2] https://www.bop.gov/coronavirus; https://www.bop.gov/locations/institutions/ftd/

The current best estimate of the $R_0$ number, the measure of viral transmissibility, is 2.5; that means for every one person who contracts COVID-19, another 2.5 people will be infected by that person, with infections growing exponentially from there.[3] In a facility where social distancing is impossible because 8 inmates are crammed into a room, and where PPE and hygiene materials are unavailable, there is no ability to mitigate the $R_0$ number. The Southern District of New York granted compassionate release to a defendant whom it had previously denied, citing the documented unreliability of the COVID-19 numbers at Fort Dix and the upward trend in infections:

> Whatever the exact number of current cases at FCI Fort Dix, it marks a worrying uptick. The number of positive tests reported on the BOP website increased from 79 to 106 within the past few weeks. *See* Fernandez Second Supp. Reply, Dkt. No. 467, at 1, 8. At the same time, the number of active cases is also increasing. *See* Fernandez First Supp. Reply at 1; Federal Bureau of Prisons, COVID-19, https://www.bop.gov/coronavirus/ (last visited Oct. 12, 2020)."[4]

Merely two weeks later, the number of positive tests increased by over 50%. The BOP's website seems to lag days behind the actual data, as they began testing for this new outbreak on October 20th, but failed to report these numbers until weeks later. Mr. Landry has kept counsel abreast of the situation within the facility with daily updates, and his missives show a disturbing pattern:

> May-October, 2020: the BOP limited inmates' access to personal protective equipment, proper nutrition, and other avenues to ensure physical and mental wellness. Mr. Landry's cell block houses over 260 inmates who share common spaces and utilities with each other: communal bathrooms and TV rooms, and over 20 inmates per phone

---

[3] *COVID-19 Pandemic Planning Scenarios*, Centers for Disease Control (Updated Sept. 10, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/planning-scenarios.html (last accessed Nov. 11, 2020)
[4] *United States v. Fernandez*, 12-cr-844-9 (AJN), 6 (S.D.N.Y. Oct. 14, 2020).

and computer. Inmates are squeezed in rooms with 12 to a room without the space to socially distance.[5]

October 9, 2020: 200 inmates recently arrived from Elkton, Ohio begin to test positive; these inmates came to FCI Fort Dix from a facility where 461 inmates tested positive in June.[6] Other inmates at FCI Fort Dix have correlated this transfer with the rapidly developing outbreak:

> "Predictably, the very same week that visits resumed and inmates arrived to Fort Dix from Elkton, the current COVID-19 outbreak started," Tommie Telfair, an inmate[], wrote in a court filing Tuesday."[7]

The BOP denies that the rest of the population is affected, and asserts that the 13 positives are limited to the transferees.[8]

October 12: 5 Fort Dix inmates test positive; 18 total positives resulting from the Elkton transfer. [9]

October 17: Inmates in Mr. Landry's cell block test positive and are removed to quarantine. [10]

October 19: Inmates bound for external programming the next day, including Mr. Landry, are tested, and 1 tests positive.[11]

---

[5] *See* Exhibit 1 "October 20 Affidavit"

[6] *Id.*, George Woolston, *Family members, advocates speak out as COVID-19 spreads inside FCI Fort Dix* , Burlington County Times (Oct. 29, 2020), https://www.burlingtoncountytimes.com/story/news/2020/10/29/family-members-speak-out-covid-19-spreads-inside-fci-fort-dix/6077553002 (last accessed Nov. 11, 2020).

[7] Joe Atmonavage, *Reported coronavirus cases nearly triple overnight at N.J. federal prison as outbreak continues*, NJ.com (Oct. 30, 2020), https://www.nj.com/news/2020/10/covid-19-outbreak-at-nj-federal-prison-continues-as-reported-cases-nearly-triple-overnight.html (last accessed Nov. 11, 2020).

[8] *Id.*

[9] *Id.*

[10] *See* Exhibit 1 "October 20 Affidavit"

[11] *See* Exhibit 1 "October 20 Affidavit"

<u>October 20:</u> Mr. Landry's 260-person cell block is locked down and placed on quarantine; 3 inmates on that block are moved to the medical block to be treated for COVID-19 symptoms and high fevers. The BOP administers tests to the entire cell block.[12] Mr. Landry was slated to enter RDAP but the program, like all other programming in the prison, was cancelled due to the outbreak. [13]

<u>October 21:</u> The total cases rise to 9 Fort Dix inmates and 5 staff members.[14] A different inmate at Ft. Dix, Tony Wragg, is tested, and is placed back into general population to await his results.

<u>October 29:</u> Mr. Wragg receives his results and tested positive for COVID-19, along with three of his nine roommates.[15]

<u>October 30:</u> The total cases rise to 165 among the inmate population.[16] Using the transmissibility number discussed above, each of those 9 people infected 2.5 people, resulting in 22.5 new infections. Each of those 22.5 people infected 2.5 people, which resulted in 56.25 new infections. Those 56.25 people caused 140.625 new infections. The number balloons astronomically as the BOP fails to break the links in the infection chain.

<u>November 5:</u> Mr. Landry sends an email to counsel detailing the following conditions:

> "the c.o even said today this woulda never happened if they didnt bring in buses from elkton, that jus shows the disregaurd they have for our safety and even since this has spiked in here they brought 7 more buses last week...they havent even tested any other buildings we have 13 total housing units and they got over

---

[12] *See* Exhibit 1 "October 20 Affidavit"

[13] *See* Exhibit 1 "October 20 Affidavit"

[14] *See* Note 7.

[15] *Id.*

[16] *Id.*

200 in just ours imagine if they tested all them... im being housed in a hospital right now this isnt normal."[17]

November 9-10: New Jersey lawmakers call for a comprehensive testing program and halting of transfers to the facility until the outbreak is eradicated.

"The letter calls on the Bureau of Prisons to "immediately" test the more than 2,700 inmates and hundreds of staff members at the prison, as well as testing both groups on at least a bi-weekly basis. The bureau does not offer COVID-19 testing for prison staff, and at least 12 staff members are currently positive with the virus, according to the agency's website." [18]

During an outbreak, the BOP is failing to identify and address the only members in the immunological pod who are moving in and out of the facility.

November 11: The BOP website reads:

"These data are compiled from a variety of sources and reviewed by BOP Health Services staff before documented for reporting. **Not all tests are conducted by and/or reported to BOP.** The number of positive tests at a facility is not equal to the number of cases, as one person may be tested more than once. The number of tests recorded per site reflects the number of persons at the specific facility who have been tested, whether at that site or at a prior facility."

The numbers at Fort Dix on November 11 according to the BOP website are: 1159 inmates with completed tests, 3 inmates with pending tests, 408 positive tests. Per the

---

[17] Exhibit 3 "November 5 Email"

[18] Joe Atmonavage, *Lawmakers have 'grave concerns' over how officials are handling COVID-19 outbreak at N.J.*, NJ.com (Nov. 10, 2020), https://www.nj.com/news/2020/11/lawmakers-have-grave-concerns-over-how-officials-are-handling-covid-19-outbreak-at-nj-prison.html (last accessed Nov. 11, 2020)

BOP, these numbers are historical since the start of testing and do not reflect the number of active cases at a facility.

<div align="center">ARGUMENT</div>

**I.   Mr. Landry is entitled to immediate relief under the sentencing guidelines, the Compassionate Release statute, and the First Step Act.**

This Court cited the need for Mr. Landry to access rehabilitative programs as a basis for its decision in sentencing him to incarceration.[19] For months, Mr. Landry has been denied access to any programming within Fort Dix. Further, his RDAP program was cancelled on October 20th--the day he was supposed to enter it--because of the outbreak at Fort Dix right now.[20] Through no fault of his own, he is unable to participate in any of the rehabilitative programming for which he was sentenced to prison. Mr. Landry has been a model inmate, and is being punished for the negligence and inadequacy of the BOP's response to the current pandemic.

The First Step Act expands the relief a defendant is entitled to under the compassionate release statute.[21] Compassionate release may be granted for "extraordinary and compelling reasons." 8 U.S.C. § 3582(c)(1)(A). The First Step Act of 2018 is the initial step in an effort at decarceration within the BOP, and it increased the number of individuals eligible for that relief based on their susceptibility to rehabilitation. The First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 ("First Step Act"). The Second Circuit explicitly recognized that the First Step Act vests the Court, not solely the BOP, with the discretion to determine what circumstances qualify as "extraordinary and compelling" for the purposes of compassionate release. [22] That Court

---

[19] Docket #106.

[20] *See* Exhibit 1 "October 20 Affidavit"

[21] *United States v. Brooker*, 976 F.3d 228, 238 (2d Cir. 2020)

[22] *Id.*

<div align="center">7</div>

directly contemplated that COVID-19 falls within that purview and could justify a revised sentence ordered by the trial court.[23] It is hard to imagine a case more extraordinary than a once-in-a-century global pandemic caused by a novel coronavirus which spreads through close proximity and aerosolized particles. [24] It is similarly difficult to imagine what could be more compelling than a demonstrated risk for severe illness and complications and lack of access to rehabilitative programs if Mr. Landry is denied relief. The Court is empowered with the discretion to protect Mr. Landry from a deadly virus endangering his life; the BOP's continued failure to properly mitigate risks to Mr. Landry proves that the Court is the only actor who can or will protect Mr. Landry.

> **II.   Mr. Landry's COVID-19 risk factors—BMI over 25 and a history of smoking—are well established in his medical records, and CDC guidance places him at an increased risk for severe complications from COVID-19 based on those factors.**

Mr. Landry's medical records show that he has continuously maintained a BMI within the 26-32 range for years.[25] The CDC updated its guidance in October to reflect that people with a BMI of 25-30 might be at an increased risk for severe complications for COVID-19, and people with a BMI over 30 affirmatively are at an increased risk for severe complications.[26] While the BOP is housing Mr. Landry—along with over 200 others—in a special area above the prison hospital, the BOP has not provided any more recent weight/BMI measurements than 2019. Mr. Landry's ability to diet and exercise to lower his BMI is functionally zero as the BOP fed his

---

[23] *Id.*

[24] *Scientific Brief: SARS-CoV-2 and Potential Airborne Transmission*, Centers for Disease Control (Updated Oct. 5, 2020) https://www.cdc.gov/coronavirus/2019-ncov/more/scientific-brief-sars-cov-2.html (last accessed Nov. 11, 2020)

[25] *See* Exhibit 5 "2018 Medical Records" and  Exhibit 6 "2019 Medical Records." *See also* Docket #165 Exhibits 1 and 2. *See also* https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm, where 200lbs and 5'6" yields a BMI of 32.3

[26] *People with Certain Medical Conditions*, Centers for Disease Control (Updated Nov. 2, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

entire block bologna and cheese sandwiches and severely limits their physical recreation.[27] Mr. Landry's weight makes him much more likely to suffer severe complications from COVID-19, which his cellmates are contracting daily in increasing numbers.

Mr. Landry's medical records and his own statements evince a history of smoking that affirmatively puts him at a severe risk for COVID-19 complications.[28] COVID-19 is a respiratory illness, and even healthy people with no risk factors have been placed on ventilators and still report trouble breathing months after testing negative for the virus.[29] For those with lung damage from a history of smoking, the decreased lung function could be fatal; the CDC has stated that people with a history of smoking are at an increased risk for severe illness and complications if they contract COVID-19.[30]

If Mr. Landry continues to languish in the petri dish that is Fort Dix, it is a question of when, not if, he contracts COVID-19. Fort Dix has repeatedly been the subject of lawsuits and attention from lawmakers for its reckless disregard for the health of its inmates during the COVID-19 pandemic.[31] One of the plaintiffs in the May lawsuit, which forecasted the dangers of an outbreak like the one currently happening within the prison, has now contracted the virus: the same man who was sent into the general population for days to await the results of a test that turned out to be positive.[32] Denying relief to Mr. Landry, who has multiple risk factors and who is surrounded by vectors for the virus, is tantamount to injecting him with COVID-19.

---

[27] *See* Exhibit 1 "October 20 Affidavit"

[28] *See* Exhibit 4 "2014 Medical Records" and Exhibit 1 "October 20 Affidavit"

[29] *Why do 'mild' Covid-19 cases sometimes linger for months? Here's what experts say*, Advisory Board (July 27, 2020), https://www.advisory.com/daily-briefing/2020/07/27/long-term-covid (last accessed Nov. 11, 2020).

[30] *People with Certain Medical Conditions*, Centers for Disease Control (Updated Nov. 2, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#smoking (last accessed Nov. 11, 2020).

[31] Samantha Melamed, *COVID-19 outbreak infecting hundreds at Fort Dix is 'escalating crisis,' N.J. senators warn*, The Philadelphia Inquirer (Nov. 10, 2020), https://www.inquirer.com/news/fci-fort-dix-coronavirus-covid-outbreak-transfers-elkton-cory-booker-bob-menendez-20201110.html (last accessed Nov. 11, 2020)

[32] *Id.*

## CONCLUSION

For the foregoing reasons, Mr. Landry respectfully requests that the Court reconsider its ruling denying him compassionate release, and GRANT him the relief requested in his initial motion.

<div style="margin-left: 40%;">

Respectfully submitted,
DAVID LANDRY
By and through counsel

</div>

November 12, 2020     /s/ *Leonard E. Milligan III*
             Leonard E. Milligan III
             BBO #668836
             MILLIGAN RONA DURAN & KING LLC
             50 Congress Street, Suite 600
             Boston, Massachusetts 02109
             Tel: 617.395.9493
             lem@mrdklaw.com

## CERTIFICATE OF SERVICE

I, Leonard E. Milligan III, hereby certify that on this 12th day of November, 2020, I served one true and correct copy of this motion, where unable to do so electronically, on all counsel of record in this matter.

Dated: November 12, 2020     /s/ *Leonard E. Milligan III*

             Leonard E. Milligan III